UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 3: 10-13-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RONALD CRAIG HORNBACK, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of Defendant Ronald Hornback's Motion to Compel. [Record No. 16] Hornback argues that he is not being given ample opportunity to inspect and analyze the hard drive which contains the pornographic images he is being prosecuted for possessing. He is seeking to compel the United States to provide him with an altered copy of the drive. On November 7, 2010, the Court held a hearing on the defendant's. After considering the briefs and evidence, Hornback's motion will be denied.

**I.    Background**

Ronald Hornback is being prosecuted for the possession of child pornography. He has hired an expert to run forensic tests on the seized computer. The expert — Mr. Eric Lakes — intends to run tests on the evidence to analyze how particular files arrived in the computer. At this time, the computer is in the possession of state authorities at the Cyber Crimes Facility in Frankfort, Kentucky. The evidence was originally seized in accordance with a state search warrant, so it remains in the hands of state authorities. The Kentucky Attorney General has

produced "Guidelines for Conducting a Defense Forensic Review." These Guidelines provide the procedure by which defense experts can analyze computers and images in the possession of the Commonwealth. Mr. Hornback takes issue with several of the Guidelines and brings this motion to compel the United States to either alter the procedure or produce a mirror image copy of the hard drive, but with actual photographs removed.

**II. Analysis**

The inspection of seized computer hard drives is governed by 18 U.S.C. § 3509(m). Section 3509(m) provides:

> **(m) Prohibition on reproduction of child pornography**.
>   (1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.
>   (2) (A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.
>     (B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.

18 U.S.C. § 3509(m). Courts have consistently upheld the constitutionality of § 3509(m). *See United States v. Battaglia*, No. 07-055, 2007 U.S. Dist. LEXIS 45773, at *10–13 (N.D. Ohio June 25, 2007) ; *United States v. Knellinger*, 471 F. Supp. 2d 640 (E.D. Va. 2007). The statute has been held constitutional because it provides a "safety valve." *Battaglia*, 2007 U.S. Dist. LEXIS 45773, at *10–11. Essentially, if the procedures provided to the defendant for inspecting

the files comport with due process, there is no constitutional issue. If, however, the procedures offend due process, the Court can order the hard drive turned over to the defendant. The analysis ultimately turns on whether the material is made "reasonably available" or, as the statute further defines, whether the Government provides "ample opportunity for inspection, viewing, and examination." 18 U.S.C. § 3509(m)(2)(B).

In this case, Hornback argues that he is not being provided an "ample opportunity" to view and inspect the material. As a result, he contends that the Court must order the United States to turn over an altered copy of the hard drive to his expert. His argument rests on three basic premises: (1) his expert would be monitored at the facilities and unable to freely consult with defense counsel; (2) his expert would not be provided simultaneous internet access, which would make his analysis difficult, inefficient, and expensive; and (3) his expert, without a mirror image, will not be able to provide on-the-spot analysis to defense counsel at trial and beforehand. None of these arguments is persuasive.

### A. Private Access and Monitoring

Hornback's first claim, that the expert would be subject to monitoring at the facility, appears to be moot. In its Response Brief, the United States indicated that Hornback's expert would be provided a private room in which he could examine the materials. [Record No. 19, p. 3] The United States further explained that the room would not be subject to monitoring, and defense counsel may accompany the expert or the expert will be provided a telephone to consult

with defense counsel during the analysis. This arrangement appears to eliminate Hornback's first concern.[1]

### B. Simultaneous Internet Access

Hornback's next claim is that his expert will not be provided simultaneous internet access in the Cyber Crimes Facility. Hornback argues that internet access is "central" to Lakes' analysis. [Record No. 16, p. 3] However, he later admits that Lakes could still do all the internet research he needed to do, it just may require multiple trips between Lakes' office in Lexington and the Cyber Crimes Facility in Frankfort. [*Id.*, p. 4]

To begin, this argument may also be factually moot. The United States has said that an internet connection cannot be provided. However, if the expert is able to provide an "air card," he could access internet through the same signal as a cellular phone. [Record No. 19, p. 4] With an air card, Mr. Lakes could obtain the simultaneous internet access he claims is necessary.

In any event, even the absence of a simultaneous internet connection does not amount to a denial of "ample opportunity." Defendant essentially argues that the analysis will be more timely and costly if Lakes has to make multiple trips back and forth between his office and the lab. However, as explained in *Battaglia*, higher discovery costs are an inevitable result of § 3509(m). 2007 U.S. Dist. LEXIS 45773, at *16. To the extent the statute's application merely causes increased costs, it does not offend due process.

---

[1] The Guidelines say that the "visiting examiner must be accompanied at all times while within the Cyber Crimes Lab." *Guidelines*, p. 2, Restriction (5). However, the United States represents that it encouraged Hornback to contact counsel if there were any issues with the guidelines. In a phone conversation, the Assistant United States Attorney told defense counsel "that all of their requests could be accommodated except providing simultaneous internet access and providing them with a mirror image of the hard drive." [Record No. 19, p.3 n.2]

Defendant relies on *Knellinger* to argue that the Court should look at increased costs when determining whether ample opportunity has been provided. 471 F. Supp. 2d at 646. However, *Knellinger* is clearly distinguishable. In *Knellinger*, the experts were analyzing whether the images on the hard drive were in fact real children. *Id.* at 647. Multiple experts testified that, to conduct such analysis, they would have to move all of their large, expensive equipment to a government facility. *Id.* The experts testified that not only would such a move be costly, they would simply not do it. *Id.* at 648. Essentially, the costs were so high as to prevent any feasible way to perform the analysis.

Hornback has not provided evidence that the costs are so high in this case as to make Lakes' analysis infeasible. To the contrary, he has merely said it would be difficult, require driving, and increase costs. Those factors do not deny "ample opportunity." In *United States v. O'Rourke*, 470 F. Supp. 2d 1049, 2007 WL 1024901 (D. Ariz. 2007), the experts had to travel from Ohio to Arizona to inspect a hard drive. The court held that, despite costs and difficulty, they had been provided ample opportunity. Here, a few trips between Frankfort and Lexington cannot be said to deny ample opportunity.

### C. On-the-Spot Consultation

Hornback's final argument is that he needs an altered image of the drive so that his expert can provide on-the-spot information preceding and during trial. This argument, if accepted, would nullify the effect of § 3509(m) altogether. Every criminal defendant would presumably need an expert to be able to consult with counsel preceding and during trial. It cannot be said, then, that such a need would require the government to provide a mirror copy.

The plain language of § 3509(m) makes clear that material containing child pornography must stay in the possession of the government. 18 U.S.C. § 3509(m)(1). Only if the material is not made reasonably available should it be copied or provided to the defendant. 18 U.S.C. § 3509(m)(2)(A). Hornback is being provided an ample opportunity to inspect and examine the material. His argument for "on-the-spot consultation" is a criticism of the statute itself, not a request the Court can grant under the authority of the statute. If a defendant's need for "on-the-spot" consultation could overcome the "ample opportunity" provision of § 3509(m), every defendant would be allowed a copy of the hard drive. In other words, if Hornback's argument is accepted, § 3509(m) would be wholly superfluous.

The government has explained that Lakes can access the evidence as many times as needed, including during trial if required. [Record No. 19, p. 3–4] Further, it has made the material reasonably available by providing Lakes an ample opportunity to view, inspect, and analyze the evidence. Finally, Lakes' testimony regarding what is feasible in his analysis is, at best, speculative: he has not even attempted to access the material at the Cyber Crimes Facility. The defendant's expert has not availed himself of the opportunity to inspect the material currently available to him, so the Court does not find his testimony that it is insufficient credible.

### III.   Conclusion

Hornback and his expert have been provided ample opportunity to forensically examine the seized computer evidence. The purported expert has been offered a private, unmonitored room. He has been provided a phone to consult with defense counsel during the analysis. He has been given the opportunity to access the evidence as often as needed. He has not, however,

been provided simultaneous internet access. Denying internet access has the effect of increasing costs and time, but does not amount to a denial of ample opportunity to view and inspect the evidence. The materials have been made reasonably available to the defendant and, therefore, should remain in the possession of the United States. Accordingly, it is hereby

**ORDERED** that Defendant Ronald Hornback's Motion to Compel [Record No. 16] is **DENIED**.

This 8th day of November, 2010.

Signed By:
*Danny C. Reeves* DCR
United States District Judge