| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 3:10-CR-13-DCR-REW |
| | ) | No. 3:13-CV-7296-DCR-REW |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| RONALD CRAIG HORNBACK, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On July 22, 2013,[1] Defendant, Ronald Craig Hornback, filed a *pro se*[2] motion,

accompanied by a memorandum, under 28 U.S.C. § 2255. DE #103 (Motion). He

additionally filed a brief in support of specified ground six and, at a later date, an

amendment to the precipitating § 2255 motion. DE ##102 (Brief); 104 (Amendment).

The United States moved for a finding of waiver of the attorney client privilege, DE #106

(Motion), and Hornback responded.  DE #108 (Response).  District Judge Reeves granted

the United States's motion regarding waiver of privilege, finding that Hornback waived

the attorney client privilege as to communications necessary to litigate claims of

ineffective assistance of counsel.  DE #109 (Opinion and Order).  The United States then

substantively responded in opposition, DE #110 (Response), and Hornback subsequently

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam). Here, Hornback affirmed under penalty of perjury that he executed and mailed the motion, per prison mail, on July 22, 2013. DE #103 (Motion) at 12.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court.  *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief") (citation omitted).

replied. DE #111 (Reply). Per normal practice, the District assigned the matter to the undersigned for a recommended disposition.

The Court **RECOMMENDS** that the District Court fully **DENY** § 2255 relief and issue **no** Certificate of Appealability.[3] A valid waiver precludes some of Hornback's claims, which also are wholly unsupported by the record. Additionally, Hornback has failed to show ineffective assistance of counsel or any other valid relief theory.

## I. Background Information

On September 2, 2010, the United States indicted Hornback on 5 counts of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and one count of possession of child pornography, in violation of 18 U.S.C. §2252(a)(4)(B). The Court arraigned Defendant, and following a detention hearing, released him pending trial. On November 24, 2010, the United States moved for a hearing on a potential conflict of interest regarding Defendant's retained counsel, Hon. T. Sherman Riggs and Hon. Nathan Riggs. The Riggses promptly moved to withdraw, acknowledging the conflict and noting consultation with the Kentucky Bar Association Ethics Hotline. DE ##38/39 (Response/Motion). Following a hearing, District Judge Reeves granted the withdrawal motion. Hornback requested, and the Court appointed, CJA counsel. DE #42 (Order appointing Hon. Joyce Merritt); DE #43 (Minute Entry).

Eventually, Judge Reeves rearraigned Defendant on one count of receipt of child pornography on April 11, 2011, DE #69 (Minute Entry), and ultimately sentenced Defendant to 121 months imprisonment followed by lifetime supervised release. DE #79

---

[3] The Court's recommendation effectively denies both pending motions. The Clerk received Hornback's brief in support of ground 6 several days prior to receiving the underlying § 2255 standard form. The Clerk construed the original brief as a § 2255 motion, which remains pending at this time. *See* DE #102.

(Judgment). Defendant appealed to the Sixth Circuit, and Merritt moved to withdraw pursuant to *Anders v. California*, 87 S. Ct. 1396 (1967). The Sixth Circuit granted the motion and reviewed the imposed sentence for reasonableness. DE #91 (Order). The Sixth Circuit fully affirmed the District Court. *Id.*

Hornback filed the instant motion under § 2255 on July 22, 2013. DE #103 (Motion). The United States responded in opposition, DE #110 (Response), and Hornback replied. DE #111 (Reply). The motion stands ripe and ready for review.[4]

## II.    Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A defendant alleging a constitutional violation must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). When alleging a non-constitutional error, a defendant must prove the error constituted a "'fundamental defect which inherently results in a complete

---

[4] Movant claims in his petition that he never received a response to a pre- § 2255 filing attempting to raise certain claims. DE #103 (Motion) at 2-3, ¶ 11. The record reflects a prompt and adverse ruling by the District Judge, which directed Hornback to § 2255. *See* DE #94 (Order).

miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1962)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving his or her factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

**III. Analysis**

In his § 2255 motion, Hornback generally premises relief requests on alleged ineffective assistance of trial counsel and other constitutional violations. DE #103 (Motion). Defendant's valid waiver precludes some of the claims. Further, based on the record, Hornback has failed to prove, by a preponderance of the evidence, that counsel provided ineffective assistance. Movant likely procedurally defaulted other constitutional claims, although no theories here have merit. Thus, Hornback is not entitled to relief under 28 U.S.C. § 2255.

A. Timeliness

The United States first alleges that Hornback's motion is untimely. DE #110 (Response) at 3. The Sixth Circuit affirmed Defendant's conviction and sentence on April 26, 2012. DE #91 (Order). Defendant then had 90 days to file a petition for a writ of certiorari with the United States Supreme Court. Sup. Ct. R. 13(1). Hornback did not seek further review, and thus his conviction became final on July 25, 2012. Accordingly, the one-year statute of limitations expired on July 25, 2013. § 2255(f)(1).

Under the prison mailbox rule, Hornback's petition is timely. *See Richard*, 290 F.3d at 812-13. The Government contends that Hornback filed the motion on August 6, 2013, but the date stamp simply reflects the date the Clerk *received* the document. In the motion itself, Hornback states under penalty of perjury that he placed the motion in the prison mail system on July 22, 2013, within the one year statute of limitations. *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (finding timely a § 2255 motion placed in the prison mail system 1 day prior to expiration of statute of limitations). As the Court has already found, *see* DE #105 (Order) at 1 n.1, Hornback's motion is timely.

## B. Waiver of Appeal and Collateral Attack Right[5]

Defendant's plea agreement states, "The Defendant waives the right to appeal and the right to attack collaterally the guilty plea and conviction, including any order of restitution." DE #70 (Plea Agreement) at 3, ¶ 8.

In the Sixth Circuit, an "informed and voluntary" collateral-attack waiver is enforceable. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. Cir. 1999); *see also United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (explaining that a defendant in a criminal case may waive any right via a plea agreement, including constitutional rights). The record in this case, including a finding by the Sixth Circuit upholding the appellate waiver, DE #91 (Sixth Circuit Order) at 2, supports waiver enforcement.

---

[5] Appellate waivers are not jurisdictional, and a court is not required to *sua sponte* consider the defense. *See Jones v. United States*, 689 F.3d 621 (6th Cir. 2012) (citing *Hunter v. United States*, 160 F.3d 1109, 1113-14 (6th Cir. 1998) (declining to enforce plea-agreement waiver after government failed to timely raise the defense)). Here, the United States raised the issue on Hornback's direct appeal, and the Sixth Circuit enforced the waiver. DE #91 (Sixth Circuit Order) at 2. On this record, and given that Hornback had notice of the issue from his direct appeal, the Court finds it appropriate to discuss the waiver and its effects.

Here, Hornback acknowledged by executing the plea agreement that he had reviewed the full document with counsel and understood its terms. DE #75 (Plea Agreement) at 5, ¶ 16. At rearraignment, Movant confirmed to District Judge Reeves, under oath, that he had read the documents and that he and his lawyer had discussed the content. DE #87 (Rearraignment Tr.) at 7-8. Defendant further affirmed that he understood the content of the plea agreement (to include the sealed supplement). *Id.* at 8. He admitted entering into the plea voluntarily. *Id.* at 12. Additionally, the District Judge personally addressed Movant and specifically discussed the appeal and collateral-attack waiver. *Id.* at 7-8 ("[I]n paragraph 8 you agree that you would waive the right to appeal and the right to attack collaterally the guilty plea and conviction, including any order of restitution. And do you understand that you're waiving or giving up those rights that I've just reviewed?"); *id.* at 8 ("And do you understand that by giving up the right to collaterally attack something you're giving up the right to file a separate lawsuit or a motion to challenge it, sometimes called a habeas motion or a habeas petition, you do understand that?"). Hornback affirmatively responded that he understood the provision. *Id.*

Additionally, Hornback confirmed to the Court that he understood the trial rights that he would forfeit by pleading guilty. *Id.* at 18-20. Finally, Hornback expressed satisfaction with the advice, counsel, and representation of his lawyer, Hon. Joyce Merritt. *Id.* at 7.

The record shows that Hornback's responses were voluntary and verified, and Judge Reeves determined at the hearing that Hornback was competent. *Id.* at 12, 24. Solemn declarations in open court "carry a strong presumption of verity" and "constitute

a formidable barrier" in subsequent collateral proceedings. *Blackledge v. Allison*, 97 S. Ct. 1621, 1629 (1977). Considering the representations that Defendant made in the plea agreement and during rearraignment, and the significance of his sworn statements, the Court can only conclude that Hornback made an "informed and voluntary" waiver. *In re Acosta*, 480 F.3d at 422. The Sixth Circuit also found valid the appellate waiver. DE #91 (Sixth Circuit Order) at 2 ("[T]here is nothing in the record to undermine the validity of the waiver.").

In sum, the Court finds the waiver effective. Several of Hornback's claims center on ineffective assistance; those conceptually implicate the plea itself and are likely non-waivable. Further, Defendant retained the right to challenge the sentence, and true jurisdiction is always subject to evaluation. The United States also did not rely on the waiver. In the interest of justice,[6] the Court does not treat the waiver as dispositive and considers the substance of all of Hornback's arguments.

C. Voluntariness of Plea

Hornback alleges that his plea was involuntary because, *inter alia*, he did not know the constitutional rights he waived by pleading guilty, he did not understand the charges, and counsel misadvised him. DE #103 (Motion) at 4. The United States defends the voluntary nature of Defendant's guilty plea, and submits an affidavit from Merritt in support. DE #110 (Response) at 4-6; DE #110-1 (Merritt Affidavit) at 1-5. In reply, Movant attacks defense counsel's affidavit as "one-sided." DE #111 (Reply) at 2. Critically, Hornback does not identify any specific misadvice or misinformation; he only asserts generically that Ms. Merritt manipulated him into signing the plea agreement.

---

[6] *Acosta*, of course, places logical limits on enforcement. If a waiver or guilty plea results from ineffective assistance or is unknowing/involuntary, *Acosta* would not enforce. *In re Acosta*, 480 F.3d at 422.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*. 106 S. Ct. 366, 369 (1985) (quoting *North Carolina v. Alford*, 91 S. Ct. 160, 164 (1970)). Where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* (citing *McMann v. Richardson*, 90 S. Ct. 1441, 1450 (1970)). "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann.*'" *Id.* (quoting *Tollett v. Henderson*, 93 S. Ct. 1602, 1608 (1973)).

Hornback stated under oath at rearraignment that he had fully discussed the case with counsel and was satisfied with the advice he had received. DE #87 (Rearr. Tr.) at 6-7. The plea transcript, reflecting Hornback's declarations under oath in open court, "carries great weight." *Marks v. Davis*, 504 Fed. App'x 383, 386 (6th Cir. 2012) (citing *Blackledge*, 97 S. Ct. 1621). Further, Movant learned of his rights and the charges and potential penalties at both arraignment and rearraignment. DE #6 (Minute Entry); DE #87 (Rearr. Tr.) at 12-13, 19-23. Hornback affirmed his understanding of the charges, possible penalties, and associated trial rights. The plea agreement listed all offense elements, DE #75 (Plea Agreement) at 1-2, ¶ 2, and Judge Reeves covered all elements at rearraignment. Given Hornback's sworn statements at rearriagnment, and the lack of any allegations that would support his characterization of an unintelligent plea, the Court must conclude that Hornback's plea "represents a voluntary and intelligent choice among

the alternative courses of action open to the defendant." *Alford*, 91 S. Ct. at 164. Judge

Reeves conducted a full and compliant Rule 11 colloquy. Finally, the Court notes that, as

reflected in Merritt's affidavit, the record shows regular and detailed correspondence

between Merritt and Hornback. *See* DE #110-1 (Merritt Affidavit) at 1-5 (noting letters

and phone calls from Merritt to Hornback); *id.* at 6-8 (January 24, 2011 letter from

counsel and February 2, 2011 letter from counsel). Again, Movant asserts no specific

facts in support of the claim. The Court rejects Defendant's arguments, which are

conclusory and unsupported. He cites no particular right, offense element, or optional

choice that counsel's representation denied him. The detailed record forecloses the

argument.

## D. Procedural Default[7]/Jurisdiction

A § 2255 motion cannot substitute for direct appeal. *Capaldi v. Pontesso*, 135

F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 . . . should not be

considered a substitute for direct appeal."); *Sunal v. Large*, 67 S. Ct. 1588, 1590 (1947)

("[T]he general rule is that the writ of habeas corpus will not be allowed to do service for

---

[7] The Government made no mention of procedural default, thus implicitly waiving the defense. *Cone v. Bell*, 129 S. Ct. 1769, 1791 n.6 (2009) (noting that "procedural default may be waived if it is not raised as a defense") (citation omitted); *Flood v. Phillips*, 90 Fed. App'x 108, 114 (6th Cir. 2004) (discussing waiver of procedural default as a defense and declining to raise the issue *sua sponte*). Courts may consider the issue *sua sponte*. *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) ("We also note that the Government failed to raise Elzy's default, either before the district court or before us on appeal. But we are not required to review the merits of defaulted claims simply because the Government has failed to raise the issue. While procedural default is not a jurisdictional bar to review of such a claim, . . . , and the Government's failure to raise the default may operate as a forfeiture of its right to defend on that ground, . . . , we nonetheless may raise issues of default *sua sponte*." (citations omitted)). *But see Howard v. Bouchard*, 405 F.3d 459 (6th Cir. 2005) (cautioning: "Like many of our sister circuits, we agree that appellate courts should not 'embrace *sua sponte* raising of procedural default issues as a matter of course.'" (citation omitted)). Here, the Court raises default but, as Hornback is not on notice of the issue, fully addresses the merits of each claim and does not rely on the doctrine.

an appeal."). To assert a claim not raised on direct review, a defendant ordinarily must show cause for the default and prejudice.[8] *See Bousley v. United States*, 118 S. Ct. 1604, 1611 (1998); *United States v. Frady*, 102 S. Ct. 1584, 1594 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). Additionally, "[i]f claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available" subject to an analysis under *Strickland v. Washington*, 104 S. Ct. 2052 (1984). *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

    1. *Sentencing Guidelines enhancements did not render Hornback's sentence unconstitutional.*

Hornback alleges that the Court applied "unconstitutional" enhancements to increase his overall sentence. DE #103 (Motion). Specifically, Movant contends that the enhancements made pursuant to United States Sentencing Guideline § 2G2.2 should have been submitted to a jury pursuant to *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000). The Government characterizes Hornback as misperceiving the law and defends as proper the Court's application of the § 2G2.2 enhancements. DE #110 (Response).

Hornback procedurally defaulted the substantive claim. Movant does not allege that he directly appealed. DE #103 (Motion). A motion for § 2255 relief does not replace a direct appeal, and Hornback does not argue cause for his default or actual innocence. The alleged error must otherwise constitute "a fundamental defect which inherently results in a complete miscarriage of justice." *Grant*, 72 F.3d at 505 (citation omitted). The record does not support a finding of this nature.

Regardless, Hornback is not entitled to relief. Defendant pled guilty to one count of receipt of child pornography under 18 U.S.C. § 2252(a)(2). Statutorily, Hornback

---

[8] Proof of actual innocence also potentially permits review of a claim not raised on direct appeal. *Bousley*, 118 S. Ct. at 1611.

faced not less than 5 years imprisonment and not more than 20 years imprisonment. The Court determined Hornback's Guidelines range to be 121 to 151 months, based on an offense level 30[9] and a criminal history category of III. District Judge Reeves ultimately sentenced Hornback to 121 months, the bottom of the Guidelines range and well within the statutory range. DE #79 (Judgment). "[A]s the Supreme Court determined in *Booker*, using judge-found facts to adjust a defendant's sentence within a prescribed statutory range, pursuant to advisory sentencing Guidelines, does not violate *Apprendi*." *United States v. Sanders*, 406 Fed. App'x 995, 997-98 (6th Cir. 2011); *see also United States v. Garcia*, 240 F.3d 180, 184 (2d Cir. 2001) (collecting cases and stating: "We therefore join the other nine circuits that have ruled on direct review that a guideline factor, unrelated to a sentence above a statutory maximum or to a mandatory statutory minimum, may be determined by a sentencing judge and need not be submitted to a jury."). Hornback's argument relative to *Apprendi* is thus meritless, and the record utterly forecloses § 2255 relief. *See also Rogers v. United States*, No. 12-6141, 2014 WL 1272121, at * 3 (6th Cir. March 31, 2014) ("Because the federal sentencing guidelines are advisory . . . judicial factfinding that affects the guideline calculation does not fit within the category of facts required under *Alleyne* to be found by a jury beyond a reasonable doubt.").

2. *The Court possessed subject matter jurisdiction and territorial jurisdiction over the offenses.*

Hornback next alleges that the Court did not have territorial jurisdiction or subject matter jurisdiction over the offenses. DE #103 (Motion) at 7. Specifically, Hornback

---

[9] Under the 2010 edition of the Guidelines, Defendant's base offense level was 22. After application of the various enhancements and adjustments, Hornback's total offense level reached 30.

alleges that Public Law 80-772 and 18 U.S.C. § 3231 are unconstitutional, thus depriving the District Court of subject matter jurisdiction. In support, Hornback submits a separate brief (DE #102). The Government defends the Court's jurisdiction and argues the constitutionality of the law. DE #110 (Response) at 12. Movant also asserts that the District Court lacked territorial jurisdiction over the offense. DE #103 (Motion) at 7. Per Hornback, the United States must affirmatively set forth a notice accepting jurisdiction over the land upon which the crimes at issue were allegedly committed. DE #103 (Memorandum) at 10; DE #111 (Reply) at 7.

Movant's attack on the constitutionality of § 3231 is groundless. Hornback alleges that his conviction and sentence are unconstitutional because the criminal jurisdiction statute, § 3231, was enacted by the House of Representatives without a quorum and was, among other deficiencies, never properly considered by the Senate. DE #103-2 (Memorandum) at 7; *see generally* DE #102 (Brief).

Defendant's effort in this regard is not novel; numerous courts have considered and rejected the argument, though the bases for doing so have varied. *United States v. Penwell*, 455 Fed. App'x 181, 183-84 (3d Cir. 2011) (collecting cases and stating: "The validity of § 3231 has been affirmed by every court to address it."); *United States v. Bogle*, 522 Fed. App'x 15 (2d Cir. 2013) (citing *United States v. Farmer*, 583 F.3d 131, 152 (2d Cir. 2009) and relying on the *Marshall Field* doctrine's "enrolled-bill rule" to preclude challenges to Public Law 80-772); *Cardenas-Celestino v. United States,* 552 F. Supp. 2d 962, 966 (W.D. Mo. 2008) (discussing and rejecting identical claim, collecting cases, and noting: "This claim is part of a new rash of frivolous claims raised by prisoners across the country, many of whom have copied the arguments directly from the

Internet Websites which propound the argument and developed by a Texas firm, International Legal Service." (citation omitted)).[10]

The Court does not perceive any need to dissect Defendant's argument in great detail; the Court agrees with the significant weight of authority indicating that Hornback's version of historical events is inaccurate. Further, the Court concludes that, even if Movant's empirical arguments are correct, two stopgaps would preclude Hornback's relief request. First, the "enrolled bill" rule, adopted by the Supreme Court in *Marshall Field & Co. v. Clark*, 12 S. Ct. 495 (1892), provides that a bill, signed by the speaker of the house, the president of the Senate, and the President of the United States, and deposited in the public archive, is authenticated "as a bill that has passed Congress should be deemed complete and unimpeachable." *Id.* at 497. Thus, the rule "prevents looking behind laws in the way that [Hornback] proposes." *United States v. Campbell*,

---

[10]   S*ee also United States v. Levy*, 849 F. Supp. 2d 1353 (S.D. Fla. 2012) (upholding constitutionality of § 3231 under the "enrolled bill rule" and the legislative record and stating: "Finally, I note that arguments identical or similar to those made by Mr. Levy have been squarely rejected by all the federal courts to have considered them. *See e.g., United States v. Campbell*, 221 Fed. App'x 459, 461 (7th Cir. 2007) (rejecting argument that § 3231 is void because the House and Senate did not vote on it during the same session of Congress); *United States v. Collins*, 510 F.3d 697, 698 (7th Cir. 2007) (describing attack on constitutionality of the enaction of Title 18 as "unbelievably frivolous"); *United States v. Potts*, 251 Fed. App'x 109, 111 (3d Cir. 2007) (denying motion to void a criminal judgment and holding that the defendant's contention that the 1948 amendment to § 3231 was not passed by both houses of Congress was "frivolous"); *Rhodes v. United States*, No. 4:06-CR-00218, 2011 WL 2693571, at *1 (E.D. Ark. July 12, 2011) (rejecting claim that a quorum was not present when the House voted on Public Law 80-772); *Turner v. United States*, No. 11-0327-WS-C, 2011 WL 5595939, at *5-*6, (S.D. Ala. Sept. 8, 2011) (denying challenge to the jurisdiction of the court on the ground that the House vote on Public Law 80-772 was taken without a quorum); *United States v. Felipe*, No. 07-CV-061, 2007 WL 2207804, at *2 (E.D. Pa. July 30, 2007) (rejecting argument that there was a *sine die* recess in Congress between the House vote on Public Law 80-772 and its adoption by the Senate in violation of the Constitution). Because there is no factual or legal support for the contention that H.R. 3190 was passed by the House in contravention of the Constitution, or that Public Law 80-772 was otherwise improperly enacted, I conclude that the court has jurisdiction in this criminal case pursuant to § 3231.").

221 Fed. App'x 459, 461 (7th Cir. 2007); s*ee also United States v. Small*, 487 Fed. App'x 302, 303 (7th Cir. 2012) ("But Small's argument is foreclosed by the 'enrolled-bill rule,' under which a bill certified by the presiding officer of each chamber—as was the case with § 3231 . . . –is 'complete and unimpeachable.'" (quoting *Marshall Field & Co.,* 12 S. Ct. at 497)). Finally, the Court notes that, even if Defendant's historical allegations were true, "the predecessor statute to 18 U.S.C. § 3231 was still in effect, and this predecessor statute unmistakably grants the same type of jurisdiction upon federal courts." *Cardenas-Celestino*, 552 F. Supp. 2d at 967-68 (citations omitted); *see also United States v. Risquet*, 426 F. Supp. 2d 310, 311-12 (E.D. Pa. 2006). Hornback's argument is unpersuasive and presents no relief basis.

Likewise, Hornback's argument relative to territorial jurisdiction also fails. Although Movant's precise argument is unclear, he may allege that, under 18 U.S.C. § 7, federal courts do not necessarily have jurisdiction over matters that do not occur exclusively on federal land. Per Defendant, the record must contain a "notice of acceptance" indicating that the state has ceded jurisdiction and the federal government has accepted jurisdiction. DE #103-2 (Memorandum) at 10-13; DE #111 (Reply) at 7-8.

Movant's argument is meritless. The Ninth Circuit addressed a similar argument, stating:

> The federal court's jurisdiction is not limited to federal crimes committed on federal lands. Pursuant to 18 U.S.C. § 3231, "[t]he district courts of the United States have original jurisdiction, exclusive of the courts of the States, of *all* offenses against the laws of the United States." (emphasis added). *See also United States v. Begay*, 42 F.3d 486, 499 (9th Cir. 1994) (holding that where situs is not an element of the offense, federal criminal statutes apply "equally to everyone everywhere within the United States").

*United States v. McCalla*, 545 F.3d 750, 756 (9th Cir. 2008); *see also United States v. Russell*, 30 Fed. App'x 348, 351-52 (6th Cir. 2002) ("Finally, Russell asserts in his pro se brief that the district court lacked subject matter jurisdiction over his offense because it occurred on private property within the state of Ohio, not on federal territory. This argument is patently meritless. Federal courts have exclusive jurisdiction over offenses against the laws of the United States under 18 U.S.C. § 3231 and the permission of the states is not a prerequisite to that jurisdiction. *See United States v. Sitton*, 968 F.2d 947, 953 (9th Cir. 1992); *United States v. Allen*, 954 F.2d 1160, 1165-66 (6th Cir. 1992). Moreover, Article I, Section 8 of the United States Constitution grants Congress the power to create, define, and punish crimes irrespective of where they are committed. *See United States v. Mundt*, 29 F.3d 233, 237 (6th Cir. 1994).").

Additionally, the Court notes that the predicate offense contains its own jurisdictional element, which does not require that acts be committed on federal land. Specifically, 18 U.S.C. § 2252(a)(2) states, in part:

(a) Any person who—

. . .

(2) knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct.

18 U.S.C. § 2252(a)(2). Thus, unlike crimes that have a distinct, property-based territorial element, the jurisdictional element was here satisfied by proof that Hornback received child pornography that traveled through interstate commerce. *United States v. Zimmerman*, 529 F. Supp. 2d 778, 7785-86 (S.D. Tex. 2007) (analyzing jurisdiction in § 2252A context) ("The Fifth Circuit has stated that 'transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes interstate commerce . . . .'" (citation omitted)). Hornback plainly conceded this element in his plea agreement, and confirmed to Judge Reeves at rearraignment that the United States could prove that he received the subject visual depiction "by using any means or facility of interstate commerce or that [the file] was transported in interstate commerce by any means, including a computer." DE# 87 (Rearr. Tr.) at 22; *see also* DE #75 (Plea Agreement) at 1, ¶ 3 ("The Defendant also admits that he obtained the file using the internet, a means or facility of interstate and foreign commerce."). Thus, to the extent Hornback challenges subject matter jurisdiction, specifically territorial jurisdiction, such claims are, on this record, meritless.[11]

E. Ineffective Assistance of Counsel

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant

---

[11] The grand jury did not indict Hornback for a crime occurring on federal land. Rather, the Indictment charged a matter occurring in this District in violation of generally applicable federal laws, to wit: Chapter 110. To the extent Hornback's claim centers on a perception of federal land as an offense element, he simply is mistaken. The relevant statue, 40 U.S.C. § 3112 has no application here. *See Thomas v. United States*, Nos. 8:13-CV-215-T-15MAP, 8:07-CR-203-T-27MAP, 2013 WL 4855067, at *2 (M.D. Fla. Sept. 11, 2013) (calling a similar claim under a 21 U.S.C. § 841 prosecution "completely frivolous" and noting that "§ 3112 has nothing to do with controlled substance cases," which rest, as here, on § 3231 for jurisdiction).

must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. In the context of a guilty plea, a movant must show that a "reasonable probability exists that, but for counsel's errors, defendant would not have pleaded guilty and would have insisted on going to trial." *Hill,* 106 S. Ct. at 370.

> 1. *Merritt's prior service on the advisory board for the Boys and Girls Club of Lexington is not a conflict of interest.*

Hornback alleges that Merritt's service on the advisory board for the Boys and Girls Club of Lexington "clearly shows actual and substantial prejudice," denying him the Sixth Amendment right to conflict-free counsel. DE #103 (Motion) at 3. Movant's theory is that, because Merritt was at some point involved with the Boys and Girls Club,

the content of the instant indictment (child pornography) presented a conflict. *Id.* The Government denies any conflict, noting that Merritt was not serving on the organization's board during her representation of Hornback. Movant's reply adds little substance to his overall claim.

"In order to establish a conflict of interest, defendant must point to specific instances in the record to suggest an actual conflict or impairment of his interests." *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996) (citation omitted). An "irrelevant or merely hypothetical" conflict does not result in a violation; "there must be an actual significant conflict." *Id.* (citation omitted). The Sixth Circuit requires a demonstration that counsel "made a choice between possible alternative courses of action" that are helpful "to one client but harmful to the other." *Moore v. Mitchell*, 708 F.3d 760, 777-78 (6th Cir. 2013) (quoting *McElrath v. Simpson*, 595 F.3d 624, 631 (6th Cir. 2010)).[12]

Movant provides no specific instance of Merritt choosing between possible courses of action, influenced by her former service to the Boys and Girls Club, which negatively impacted case outcome. Hornback's claim is generalized: Merritt's (prior) service to and work with children disqualifies her from defending persons indicted on child pornography offenses. Notably, counsel denies that her prior service to the civic organization conflicted with her representation of Hornback. DE #110 (Merritt Affidavit) at 5, ¶ 13. Although Hornback cites a variety of case law and regulations, none of those materials really applies here.[13] Simply put, Defendant fails to articulate a viable

---

[12] The Court does not here assess the prejudice component, and the "modified version of the two-part *Strickland* test" that applies if a conflict exists. *See Moore*, 708 F.3d at 777.

[13] To the extent Hornback cites labor regulations, such authority is inapplicable to constitutional analysis in post-judgment criminal proceedings.

constitutional claim. Generalized claims of a non-specific conflict and unarticulated harm/prejudice are not cognizable, and *Strickland* provides no avenue for relief.

Hornback's claim is conceptually worrisome. With no assertion of any particular improper decision or action by counsel, Movant instead seeks to attach disqualifying social or philosophical views to a lawyer based on that lawyer's philanthropic efforts. Certainly, a lawyer could have a strong enough personal interest in a subject matter to warrant disqualification. *See, e.g.,* Ky Sup. Ct. Rule 3.130(1.7(a)(2)). Further, a lawyer may (perhaps must) decline representation that she sees as sufficiently repugnant to influence the attorney's proper role. *See id.* (6.2(c)). Here, however, Hornback offers nothing beyond the rankest of speculation about Merritt's personal views and the influence of those views on her professional conduct. The Court will not subscribe to the theory that everyone personally in favor of protecting the interests of youth thereby cannot properly defend individuals accused of crimes against children. Lawyers, by training, act with objectivity and case-specific zeal. Nothing in this record supports further inquiry into Merritt's role in this case, and Hornback can cite to no specific event, election, or strategic choice by Merritt colored in any way by her history of volunteerism. For her part, Merritt denies any temporal overlap or ideological clash between her board service and this case. More importantly, she avers that nothing in any way impaired her representation of Defendant. On this record, that is enough to conclude the argument adverse to Movant.

2.  *Defense counsel performed an adequate investigation and did not prejudice Hornback by filing an* Anders *brief.  Further, Hornback was not constructively denied the right to counsel.*

Hornback summarily alleges that Merritt failed to perform an adequate investigation by failing to challenge an allegedly defective search warrant. DE #103 (Motion) at 6. Defendant also sees prejudice from counsel's *Anders* brief. *Anders v. California*, 87 S. Ct. 1396 (1967). Hornback further contends that he was constructively denied the right to counsel.  The United States defends Merritt's performance and denies any constitutional error.  DE #110 (Response) at 10-11.

Movant's argument relative to a deficient investigation hinges on Merritt's failure to challenge an allegedly defective warrant or warrants. However, Hornback does not indicate how a search warrant was defective or provide any details about any actions counsel should allegedly have taken. In reply, Defendant indicates that the first search warrant was served on a "mentally incompetent family member with medical issues" and the second contained the wrong address and was again served on a mentally incompetent family member.  DE #111 (Reply) at 12. Again, however, Hornback does not provide any details to challenge the constitutionality of warrant issuance or execution. He does not make any evidence-based attack on warrant propriety or irregularities about service/execution of the warrants. The targeted warrants are not in the record, foreclosing further review as to a matter on which Movant has the burden. Hornback's generalities are inadequate. *Kimmelman v. Morrison,* 106 S. Ct. 2574, 2586-87 (1986), applies *Strickland* to a claim premised on a forgone motion to suppress. Consistent with *Strickland*'s deference to strategic choices of counsel, *Kimmelman* requires a movant to "prove that his Fourth Amendment claim is meritorious and that there is a reasonable

probability that the verdict [or here, result] would have been different[.]" *Id.* at 2583. Without even the warrants to assess, there simply is nothing in the record to substantiate in any way Hornback's complaints.[14] *See also Rann v. Atchison*, 689 F.3d 832, 835-46 (7th Cir. 2012) ("As Rann's ineffective assistance of counsel claim arises from his counsel's failure to move to suppress evidence, Rann must prove "'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.'") (quoting *Ebert v. Gaetz,* 610 F.3d 404, 411 (7th Cir.2010) (in turn quoting *Kimmelman.*)); *United States v. Reid*, No. 6:07-110-DCR, 2013 WL 173502, at *2 (E.D. Ky. Jan. 16, 2013) (denying defendant's claim of ineffective assistance for failure to provide any evidence in support of claim); *see also Lovejoy v. United States*, No. 95-3968, 1996 WL 331050, at *3 (6th Cir. June 21, 1996) (Sixth Circuit acknowledging that conclusory statements are insufficient to warrant § 2255 relief).

As to the investigation quality, contrary to Movant's statements, the record reflects that Merritt twice offered to take Hornback to the KSP Cybercrimes unit "to review the evidence against him," including an explanation of "how and where child pornography was found on his computer." DE #110-1 (Merritt Affidavit) at 2. Defendant refused the meeting, stating that he "believed he had enough information from review of the reports and the information" to make a decision regarding ultimate case disposition. Per Merritt's affidavit, Hornback refused this meeting on multiple occasions. *Id.* Ultimately, Hornback consented to meet with Merritt and Lakes (the retained defense

---

[14] Merritt's affidavit confirms that she fully reviewed all discovery. DE #110-1 (Merritt Affidavit) at 1, ¶ 2. Further, her time records show detailed assessment of all discovery, including review of the underlying warrants. DE #110-1 (CJA billing) at 17. The lawyer plainly perceived no basis for a suppression motion, a strategic choice entitled to deference.

expert), and the trio "went through a lengthy discussion of the files [Lakes] found on [Hornback's] computer, the location of said files and the evidence of the government." *Id.* at 3. Defendant's vague and conclusory allegations plainly fail. The record reveals an appropriate investigation that Hornback does not effectively impugn. He lists no topic Merritt failed to assess and consider.

Further, to the extent that Hornback challenges Merritt's *Anders* brief, he raises no viable constitutional challenge. Under *Anders*, if defense counsel determines after a "conscientious examination" of the record that an appeal would be "wholly frivolous," counsel may request permission to withdraw and file a brief "referring to anything in the record that might arguably support the appeal." *Anders*, 87 S. Ct. at 1400. Counsel must serve the defendant, after which the defendant has a response opportunity and the ability to request counsel. The circuit court "then proceeds, after a full examination of all of the proceedings, to decide whether the case is wholly frivolous." *Id.* The appellate court may grant the motion and dismiss the appeal or, if it finds any colorable arguments, appoint counsel prior to ordering briefing. *Id.*

Merritt followed that procedure here. Her *Anders* brief indicated that there were no colorable issues for appeal, identifying as a potential issue the reasonableness of the sentence. DE #91 (Sixth Circuit Order). Hornback moved for new counsel. The Sixth Circuit denied the request and stated: "An independent examination of the proceedings shows that counsel made an adequate review of the record and that there is no issue that would support a viable direct appeal." *Id.* Although Hornback states in reply that he insisted on "following up" on alleged jurisdiction defects, such arguments would have

been meritless, as this decision explains. Counsel followed the procedure set forth in *Anders*, and the Sixth Circuit confirmed that Hornback had no appealable issues.

Finally, the Court rejects Hornback's contention that he was constructively denied the right to counsel. Specifically, Movant alleges that Merritt failed to provide him meaningful assistance: "[she] prejudiced the fairness and integrity of such proceedings by her lack of investigation, affirmative misadvice and her total lack of professionalism in not withdrawing from such proceedings knowing the 'conflict of interest[.]'"DE #103 (Motion) at 5.

The Sixth Circuit has succinctly stated the standard for constructive denial of counsel:

> If a claim is governed by *Cronic*, . . . the defendant need not demonstrate any prejudice resulting from the lack of effective counsel; in some cases, the Sixth Amendment violations are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984). Three types of cases warrant *Cronic*'s presumption-of-prejudice analysis. The first is the complete denial of counsel, in which "the accused is denied the presence of counsel at 'a critical stage.'" The second is when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." The third is when counsel is placed in circumstances in which competent counsel very likely could not render assistance.

*United States v. Morris*, 470 F.3d 596, 601 (6th Cir. 2006) (quoting *Mitchell v. Mason*, 325 F.3d 732, 741-42 (6th Cir. 2003)). In the instant case, Hornback articulates no claims of a *Cronic* nature. He admits that he had assistance of counsel throughout the case, and he does not allege that Merritt failed to meaningfully and appropriately challenge the Government's case. He further fails to indicate any particular case circumstance that prevented Merritt from rendering assistance, other than her alleged conflict, which the

Court has already rejected. *Cronic* fails to apply and does not provide grounds for § 2255 relief.

To the extent Hornback's claim is more appropriately construed as a claim of cumulative error, the Court also rejects that effort. Under this analysis, "'a defendant must show that the combined effect of individually harmless errors were so prejudicial as to render his trial fundamentally unfair.'" *United States v. Warman*, 578 F.3d 320 (6th Cir. 2009) (quoting *United States v Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004)). Here, however, as Hornback did not demonstrate relief on any single claim, "there is no 'error' to consider, and the cumulative error doctrine does not warrant reversal." *United States v. Sypher*, 684 F.3d 622, 628-29 (6th Cir. 2012) (quoting *United States v. Deitz*, 577 F.3d 672, 697 (6th Cir. 2009)).

The Court perceives a litigant dissatisfied with the result from a self-created situation. Merritt, as documented in the affidavit and the tendered CJA time records,[15] invested appropriately in the case, spending dozens of hours on research, interviews, and consultation with an expert. She secured or augmented that expert via court appointment and utilized the expert in an effort to prepare for trial and advise Hornback. It may be true that Merritt and the expert saw few positive avenues for proof and perceived few palatable options; that, however, results from the merits presented in the discovery, not any deficiency of counsel. Hornback's motion is a general rant against the circumstances he created by his criminal conduct. Merritt is a handy target, but the Court must process claims based on particulars, and Hornback offers none here against his lawyer. It is clear

---

[15] The Court notes that Merritt billed for (but did not actually seek) an excess fee, which is relevant because it shows that she put significant time into a case that did not even result in trial. This counters any complaint Hornback makes about the level of investigation and analysis Merritt pursued.

that Merritt would have tried and was ready to try the case. In pleading guilty, Hornback made a hard choice between evils; the tight range of bad options is not his lawyer's fault. Merritt succeeded in lowering Hornback's Guidelines range significantly, and she secured a bottom of range sentence. Hornback's screed has no substance.

F. Amendment to § 2255 Motion and Relation Back.

On August 3, 2013, Hornback filed an amendment to his § 2255 motion. DE #104 (Amendment). Specifically, Hornback seeks to add one claim of structural error, alleging that the Court committed structural error by terminating his retained counsel from the case. *Id.* The United States responded substantively but did not address whether the amendment was timely or otherwise related back. DE #110 (Response) at 13.

Here, Movant filed the amendment on August 3, 2013, after the passage of the one-year statute of limitations. *Oleson v. United States*, 27 Fed. App'x 566 (6th Cir. 2001) ("Oleson's proposed amendment is subject to the § 2255 one-year statute of limitations affirmative defense.") (citing *United States v. Craycraft*, 167 F.3d 451, 456 (8th Cir. 1999)). Federal Rule of Civil Procedure 15(c), made applicable to habeas proceedings by 28 U.S.C. § 2242, does provide for the relation back of amendments to the original pleading in discrete circumstances. Under the relation back doctrine, an amended pleading can be treated as filed on the date of the original pleading for statute of limitations purposes. *Pessotti v. Eagle Mfg. Co.,* 946 F.2d 974, 975 (1st Cir. 1991). Per Rule 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original

pleading." Fed. R. Civ. P. 15(c)(1)(B). In the habeas context, this standard requires an "operative core of common facts uniting the original and newly asserted claims." *Mayle v. Felix*, 125 S. Ct. 2562, 2563 (2005). A claim simply arising out of the same conviction and judgment is insufficient. *Id.* Given that the United States substantively responded, the Court will assess the theory.[16]

Hornback's claim is without merit. "Structural errors are 'structural defects in the constitution of the trial mechanism and thus defy analysis by harmless-error standards.'" *United States v. Evans*, No. 13-5026, 2014 WL 1012288, at *3 (6th Cir. Mar. 18, 2014) (quoting *Arizona v. Fulminante*, 111 S. Ct. 1246 (1991)). Structural errors are a "'very limited'" class. *Id.* (quoting *United States v. Marcus*, 130 S. Ct. 2159 (2010)).

Here, the record reflects that Defendant initially retained Hon. Nathan T. Riggs and Hon. T. Sherman Riggs. The United States sought a hearing, alleging that the Riggses also then represented Defendant's son, Austin, in state court matters. Per correspondence from the lawyers, Hornback's defense strategy implicated Austin. DE #32 (Motion); DE #32-3 (Letter from defense counsel). The Riggses acknowledged the conflict and sought to withdraw, indicating consultation with the Kentucky Bar Association Ethics Hotline. DE ##38 (Response), 39 (Motion to withdraw). Judge Reeves granted the motion, and upon Hornback's request, appointed CJA counsel. DE #42 (Order appointing counsel); #43 (Minute Entry).

---

[16] The United States has waived any statute of limitations argument regarding Hornback's proposed amendment, so the Court does not conduct a relation-back analysis and instead considers the substance of the amendment. *See Armstrong v. United States*, 107 Fed. App'x 522, 523 (6th Cir. 2004) ("A district court may not sua sponte raise the statute of limitations defense and dismiss a motion to vacate on that ground after ordering the government to file a responsive pleading. . . . Where a district court does so, the district court's dismissal constitutes an impermissible curing of the government's waiver." (citation omitted)).

Although the "erroneous deprivation of the right to chosen counsel constitutes a structural error," *United States v. Turner*, 651 F.3d 743, 748 (7th Cir. 2011), no such error occurred here. Contrary to Movant's assertions, the Riggses acknowledged the disqualifying potential conflict and moved to withdraw. The Court granted the motion, and *upon Defendant's own request*, appointed counsel. The record shows no objection by Hornback, and the motion states he was actually and actively attempting to replace his lawyers by substitution. DE #39 (Motion) at 1.

It is accurate that wrongful denial of chosen counsel is a structural error and requires no prejudice assessment. *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2564-65 (2006). However, there is a broad field between denial and **wrongfu**l denial. *Gonzalez-Lopez* expressly preserved the Court's power to regulate attorney presence in a case premised on ethical obligations and overall fairness. *See id.* at 2565-66 (referencing conflict analysis set forth in *Wheat v. United States*, 108 S. Ct. 1692 (1988), and stating, "Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them"). Here, the Court simply permitted lawyers with an obvious ethical dilemma (and likely nonconsentable conflict) to withdraw at a time and in a manner that protected Hornback's interests. *See Wheat*, 108 S. Ct. at 1698 (confirming "there can be no doubt that" court "may decline a proffer of waiver" in face of actual conflict and also has "substantial latitude in refusing waivers of conflicts of interest" even when perceiving that only "potential for conflict exists"). The lawyers had consulted the KBA, further buttressing the need to withdraw.

The Court had no obligation to require lawyers to remain in a case while facing a direct conflict for current representation of defendants with antagonistic interests. The same legal team simultaneously was defending and pointing the finger at Austin Hornback, spawning innumerable conflicting duties to Austin and to Ronald, the father and defendant here. Undoubtedly, had the Court kept the lawyers in, Hornback would be arguing the other side of the conflict coin. *See Wheat*, 108 S. Ct. at 1698 (noting likelihood of court being "whip-sawed" between inconsistent error assertions); *see also United States v. Treadway*, 328 F.3d 878, 887 (6th Cir. 2003) (acknowledging competing values and rejecting Sixth Amendment claim: "the district court . . . acted appropriately in allowing the withdrawal of Agee due to the potential for a conflict of interest in defending [defendant]"); *see also id.* ("While the Sixth Amendment affords the right to counsel of one's choosing, 'the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.'") (quoting *Wheat*, 108 S. Ct. at 1697). The withdrawal ruling was proper.

## III.    Certificate of Appealability[17]

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This

---

[17] 28 U.S.C. § 2255(b) requires the Court to hold an evidentiary hearing unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). Here, none of Hornback's generic and speculative claims warrants a hearing; the files and records of the case conclusively show, for the reasons stated fully above, that Hornback is not entitled to relief.

standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604.

Defendant has not made a "substantial showing" as to any claimed denial of rights; his *Strickland* and other claims conclusively fail. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## IV. Recommendation

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge wholly **DENY** § 2255 relief (DE ##102, 103) and grant **no** Certificate of Appealability.

\* \* \* \* \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District

Courts, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 6th day of May, 2014.

**Signed By:**

*Robert E. Wier*

**United States Magistrate Judge**